892 So.2d 1155 (2005)
In the Interest of C.S., J.S., and S.S., Children.
J.S., Appellant,
v.
Department of Children and Family Services, Appellee.
No. 2D04-1432.
District Court of Appeal of Florida, Second District.
January 19, 2005.
*1156 Michael P. Maddux and Alyssa L. Katz of Michael P. Maddux, P.A., Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Christopher Perrone, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
J.S. contends the evidence was insufficient to support an order adjudicating his three children dependent. We agree and reverse.
The Department of Children and Family Services filed dependency petitions against both J.S. and the children's mother. The mother did not contest the dependency. After a hearing on the petition against the father, the circuit court found that he had abandoned the children. The court also noted that the father had a history of abusing marijuana and methamphetamine.
The evidence reflected that the children's father and mother were married from 1988 until 1995 or 1996. In 1996, they entered into a court-approved agreement to place the children with the paternal grandparents. Problems arose with this placement after the grandmother died in 2000. Sometime after her death, J.S. moved into his father's home to assist with the children's care. It is unclear how long he lived with the children in that home, but at some point in 2002, he remarried. In mid-2002, the children began living with their father, along with his new wife and her five children. J.S.'s children began exhibiting behavioral problems, and in February 2003, he returned the children to the grandfather's care. Unfortunately, the grandfather, who was seventy years old, could not control the children. The department filed a petition for dependency against him in June 2003. After the petition was filed, the eldest child began living with her mother. The two younger children were placed with the maternal grandparents, but they eventually wound up living with the father. On July 4, 2003, he *1157 took them to the mother's home and left them there.
In September 2003, the department dismissed the dependency petition against the paternal grandfather, and he petitioned the court to change custody of the children to the mother. The department assented to that arrangement as long as the mother agreed to receive voluntary protective services. The children lived with her until October 7, 2003, when she was arrested and the children were placed in shelter. Two of the children were later placed in a foster home and the third with a family friend.
Between the time J.S. left the younger children with their mother in July 2003 and the time of the dependency hearing in January 2004, his contact with all of them was limited. His eldest daughter testified that they did not see each other but spoke on the telephone, perhaps once a week. He had also recently given her gifts. The guardian ad litem reported that the father's visits with the children were "sporadic." Sometime before the hearing he began paying $24 per week to the paternal grandfather for child support arrearages he owed.
Section 39.01(1), Florida Statutes (2003) defines abandonment as:
[A] situation in which the parent ..., while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of such parent ... to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
The circuit court found that the father's efforts were only marginal. We agree that his efforts were weak, but the department did not establish that his conduct "evince[d] a willful rejection of parental obligations" or failed to "evince a settled purpose to assume parental duties." See § 39.01(1); S.C. v. Dep't of Children & Families, 767 So.2d 579 (Fla. 5th DCA 2000). During the time the children lived with the paternal grandparents, the father visited often and in fact lived for some time in the home with them. See In re W.H., 846 So.2d 636, 638 (Fla. 2d DCA 2003) (holding that a parent did not abandon her children when, among other things, she let her children live with their grandparents while she worked out personal problems). When problems arose, he took custody of the children several times. While his recent contacts have been minimal, he is still in touch with them, particularly the eldest child. He is also attempting to repay the support he owes to the paternal grandfather. His conduct does not meet the statutory threshold for abandonment. See In re M.K.S., 726 So.2d 309, 312 (Fla. 2d DCA 1998) (holding that father's less than exemplary financial and emotional support of his child did not prove abandonment).
The circuit court also noted evidence that the father had a drug problem. But it did not specifically state that the department had proved the allegation in the dependency petition that the father had used controlled substances in a manner that had adversely affected the children. We note that under chapter 39 a child's health and welfare may be deemed to have been harmed when a parent "exposes a child to a controlled substance[,]" which may be established by proof of a parent's "[c]ontinued chronic and severe use of a controlled substance ... when the child is demonstrably adversely affected by such usage." § 39.01(30)(g)2. No such harm was proved here, however. The testimony showed that the father formerly used illegal drugs, but there was no proof of any drug use in the past few years. In *1158 fact, his father and his current wife testified he was not presently using them. Moreover, no evidence suggested that the children had actually suffered any harm or injury from his drug use. See B.C. v. Dep't of Children & Families, 846 So.2d 1273, 1275 (Fla. 4th DCA 2003). As such, if the dependency determination was based on this allegation, it was unproved.[1]
We reverse the order adjudicating the children dependent as to their father, J.S.
SILBERMAN and VILLANTI, JJ., Concur.
NOTES
[1] The findings of fact in the order of dependency also relate an incident in which the father, while engaged in a physical altercation with the grandfather, pushed his son who tried to intervene. The son suffered minor injury. The department's petition did not allege abuse as a ground for the dependency. Even if it had, the evidence did not prove abuse based on this one incident. See § 39.01(2).